# NOTE

June 5th, 2006           WESTBROOK,           MAINE
[Date]           [City]           [State]

LOT 6 BALLPARK DRIVE, PORTLAND, Maine 04103

[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ **388,000.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **FIRST HORIZON HOME LOAN CORPORATION**

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **7.750** %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the **first** day of each month beginning on **August 1st, 2007**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **July 1st, 2037**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at **PO BOX 809 MEMPHIS, TN 38101** or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ **2,779.68** .

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

EXHIBIT B

MAINE FIXED RATE NOTE-Single Family-**Fannie Mae/Freddie Mac** UNIFORM INSTRUMENT

VMP -5N(ME) (0005)    Form 3220 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3    Initials: _____

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

#### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.00** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

#### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

#### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

#### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

#### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.


-5N(ME) (0005)

Page 2 of 3


Form 3220 1/01
Initials:

### 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any interest in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, Lender will not require immediate payment in full if prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement, following the procedures in Section 15. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

x _____/s/ Dodi S. Sidelinger_____ (Seal)          _____ (Seal)
DODI S. SIDELINGER                  -Borrower                                            -Borrower

_____ (Seal)          _____ (Seal)
                                    -Borrower                                            -Borrower

_____ (Seal)          _____ (Seal)
                                    -Borrower                                            -Borrower

_____ (Seal)          _____ (Seal)
                                    -Borrower                                            -Borrower

Pay to the order of
Without recourse
First Horizon Home Loan Corporation
by _____/s/_____
B.J. Cooley, Vice President

[Sign Original Only]

VMP®-5N(ME) (0005)          Page 3 of 3          Form 3220 1/01

# RESIDENTIAL CONSTRUCTION LOAN
## ALLONGE TO NOTE

THIS ALLONGE is affixed to and incorporated into and shall be deemed to amend and supplement the Note ("**Note**"), of even date herewith, given by the undersigned Borrower ("**Borrower**") whether one or more) to evidence **Borrower's** indebtedness to the **Note Holder**, which indebtedness is secured by that certain Mortgage/Deed of Trust ("**Security Instrument**"), of even date herewith, covering the premises described in the **Security Instrument**. If the Federal Home Loan Mortgage Corporation or the Federal National Mortgage Association buys all or some of the **Note Holder's** rights under the **Security Instrument** and **Note**, the promises and agreements in this **Allonge** will no longer have any force or effect (except as may be required for lien validity and/or **Note** enforcement). Notwithstanding anything to the contrary set forth in the **Note**, **Borrower** hereby agrees to the following:

1. **CONSTRUCTION/PERMANENT LOAN**

   This **Note**, as amended, represents both a construction/home improvement loan and a permanent mortgage loan. During the **Construction Period** of the loan the **Note Holder** will periodically advance principal amounts of the **Note** for the construction of certain improvements ("**Improvements**") in accordance with one or more Construction Loan Agreement(s)/Residential Construction Loan Agreement(s) (jointly and severally "**Agreement**"). The "**Construction Period**" is defined as the period extending from the date of the **Note** to and including ___6/03/2007___. On the day after the **Construction Period** ends, the loan evidenced by this **Note** will be a permanent mortgage loan ("**Permanent Mortgage Date**"). Beginning on the **Permanent Mortgage Date**, interest shall accrue as stated in the **Note** or **Modification Agreement**, as applicable, and monthly payments of principal and interest shall be due and payable as set forth in the **Note** or **Modification Agreement**, subject to subsection 2.(B) or 2.(C) hereof, as applicable.

2. **INTEREST**

   (A) **Interest During the Construction Period**

   ☐ Borrower will pay interest only, based on a 360-day year, on the amount advanced by the Note Holder at the locked rate of __N/A__ % during the **Construction Period** of the loan.

   ☒ Borrower will pay interest only, based on a 360-day year, on the amount advanced by the Note Holder at the rate of **prime +** __1.5__ % during the **Construction Period** of the loan, as such interest rate exists daily ("**Construction Rate**"). The **Construction Rate** interest will be calculated daily on the amount advanced and the **Construction Rate** will change as and when **prime** changes. Prime is defined as that rate published as the Prime Rate in the Money Rates Section of *The Wall Street Journal* from time to time. If more than one Prime Rate is published in *The Wall Street Journal*, the highest published Prime Rate will apply. Should the Prime Rate cease to be published in *The Wall Street Journal*, Note Holder has the right to choose another index substantially similar to the Prime Rate on which to rely. The maximum interest rate under this subsection (A) will not exceed 18%, or the state usury ceiling, whichever is less.

   Borrower will make monthly interest payments by the 15th of each month for the amount billed by the Note Holder. Note Holder will impose a late charge for any payment not received by the due date. The amount of the late charge will be __5.00__ % of the outstanding payment. In the event that the construction of the **Improvements** has not been substantially completed during the **Construction Period** of the loan, the **Note Holder** may require an extension of the **Construction Period** and a rescheduling of the **Note**, if deemed necessary for completion of the **Improvements** securing the lien or may at its option, upon providing such notices as required by law, require immediate payment of all funds secured by the **Security Instrument**.

   ☐ (B) **Interest Paid on the Permanent Loan (Locked Rate)**

   Beginning on the **Permanent Mortgage Date**, interest shall be paid at the rate stated in the **Note** provided the locked interest rate has not expired. Principal and interest payments shall also be due and payable as set forth in the **Note**. If the locked interest rate has expired during the **Construction Period** or prior to the **Permanent Mortgage Date**, **Note Holder**, at **Note Holder's** discretion, shall establish the interest rate on the **Note** at the **Note Holder's** prevailing rate for mortgage loans with terms and conditions comparable to those contained in the **Note** as published in **Note Holder's** Daily rate sheets for the first business day after the date the locked interest rate has expired, and **Borrower** agrees to execute a **Modification Agreement** to establish such changed permanent interest rate at that time. Failure to execute the **Modification Agreement** shall constitute default under the **Note**.

   ☒ (C) **Interest Paid on the Permanent Loan (Non-locked Rate)**

   At least fifteen (15) days prior to the **Permanent Mortgage Date**, **Borrower** must notify **Note Holder** to establish the interest rate on the **Note** at the **Note Holder's** prevailing rate for mortgage loans with terms and conditions comparable to those contained in the **Note** as published in **Note Holder's** Daily rate sheets for the first business day after the date the **Note Holder** actually receives the notice. If **Borrower** fails to notify **Note Holder** or timely notify **Note Holder**, as aforesaid, then **Note Holder**, at **Note Holder's** discretion, shall establish the interest rate on the **Note** in accordance with this paragraph based on **Note Holder's** Daily rate sheets published for the first business day after the notice period ends. **Borrower** agrees to execute a **Modification Agreement** to establish such changed permanent interest rate at that time. Failure to execute such **Modification Agreement** shall constitute default under the **Note**. The maximum interest rate under this subsection (C) will not exceed 18%, or the state usury ceiling, whichever is less.

3. **ADVANCES**

To the extent not prohibited by applicable law, until the **Improvements** are completed, any amount of principal not advanced prior to the end of the **Construction Period** may, in the sole discretion of **Note Holder**, be funded into an escrow account or into a pledged account with the **Note Holder** or its designated escrow agent, and advances may be made out of such escrow or pledged account for completion of the **Improvements** after the **Construction Period**. Alternatively, **Note Holder** may require immediate payment of the **Note** or an extension of the **Construction Period** and a rescheduling of the **Note**, if deemed necessary for completion of the **Improvements**. Any portion of a payment received in excess of interest due or any funds not advanced under the **Agreement** may at the option of the **Note Holder** be used to pay costs associated with the construction of the **Improvements** or may be credited against the principal amount of the **Note**.

4. **EXTENSIONS**

Failure to complete construction of the **Improvements** as described in the **Agreement** by the **Permanent Mortgage Date** shall constitute an event of default hereunder, under the **Security Instrument**, and under the **Agreement**. **Note Holder** in its sole discretion may elect to extend the **Construction Period** and **Permanent Mortgage Date** to a date not more than ninety (90) days in the future to facilitate the completion of construction of the **Improvements**. **Permanent Mortgage Date** shall mean the initial **Permanent Mortgage Date** or any extension thereof. Lender may, in its sole discretion, grant such extension upon **Borrower's** payment of an extension fee in an amount equal to one-half of one percent (1/2 of 1%) of the original principal amount stated in the **Note** plus all costs associated with the extension. Extensions beyond ninety (90) days are at the sole discretion of **Note Holder**.

5. **EVENTS OF DEFAULT AND ACCELERATION OF THE DEBT**

**Note Holder**, upon providing such notices as required by law and the Loan Documents, may declare the entire unpaid principal balance and accrued interest then owed under the **Note**, as amended by this **Allonge**, immediately due and payable ("**Acceleration**") if any payment of interest is not made when due during the **Construction Period** or if default should occur under any covenant, condition or agreement contained in the Loan Documents. The definition of Loan Documents includes (but is not limited to) the **Note**, as amended by this **Allonge**, the **Security Instrument** and the **Agreement**. In case of **Acceleration** of the Note, interest shall accrue at an interest rate of 5% above the then prevailing market rate for that particular loan program which the loan terms are based upon, not to exceed the highest lawful rate permitted by whichever applicable United States federal or State law that permits the highest interest rate, until the **Note** is paid in full or is reinstated or renewed and extended.

6. **CONFLICTS**

If any term or provision of this **Allonge** shall be in conflict with any term or provision of the **Note**, the term or provision of this **Allonge** shall control. This **Allonge** shall be interpreted under the laws of the State of __Maine__. Any provisions of this **Allonge** adjudged to be invalid shall be deemed amended from it, with the remainder of the provisions to be in full force and effect. Any remedies or rights of **Note Holder** expressed in this **Allonge** are cumulative of, and not exclusive of, any other remedies and rights of **Note Holder** under the Loan Documents and applicable state law. Except as amended or supplemented hereby, the terms and provisions of the **Note** shall remain unchanged and in full force and effect.

7. **TERMINATION**

After the advance of all **Note** funds necessary to complete the **Improvements**, completion of the **Improvements**, and the satisfaction of all conditions described in the **Agreement**, this **Allonge** will be null and void and no longer in effect (except as may be required for lien validity and/or **Note** enforcement), and any unadvanced **Note** funds will be credited to the principal balance of the **Note**.

8. **MODIFICATION OF THE LOAN**

Should the application of any provision of this **Allonge** change any of the **Note** terms, **Borrower** agrees to execute a **Modification Agreement** which shall be in form and content as **Note Holder** shall reasonably require causing the interest rate or other terms of the **Note** to be changed in accordance with the provisions set forth above. Failure to execute such **Modification Agreement** shall constitute default under the **Note**.

9. **NOTICE OF NO ORAL AGREEMENT**

The Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

In acceptance and agreement to the terms and covenants contained in this **Allonge**, **Borrower** has executed same on this ___5th___ day of ___June, 2006___.

X _/s/ Dodi Simm_____
(Borrower) DODI S. SIDELINGER            (Borrower)


_____        _____
(Borrower)                           (Borrower)

# ALLONGE

## THIS ALLONGE IS TO BE PART OF THE NOTE

**LOAN NUMBER:**

**DATE OF NOTE:**          June 5th, 2006

**LENDER ON NOTE:**    First Horizon Home Loan Corporation

**BORROWER(S):**          Dodi S. Sidelinger

**PROPERTY ADDRESS:**   LOT 6 Ballpark Drive
                        Portland, ME. 04103

**LOAN AMOUNT:**         $388,000.00

**PAY TO THE ORDER OF**
First Horizon Home Loans, a division of First Tennessee Bank National Association

**WITHOUT RECOURSE**

By: First Horizon Home Loans, a division of
First Tennessee Bank National Association,
As successor in interest by merger to
First Horizon Home Loan Corporation,
It's Attorney In Fact

By: *[signature]*
Donna Jones, Vice President

Pay to the order of

Without Recourse
First Horizon Home Loans a division of
First Tennessee Bank National Association

by *[signature]*
Belinda DeArman, Senior Vice President

1